IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MADERO POUNCIL,

          Petitioner,              No. 2:12-cv-0042 WBS AC P

     vs.

WILLIAM KNIPP, Warden,         <u>ORDER &</u>

          Respondent.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner, a state prisoner proceeding pro se, has filed an application for habeas relief pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in 1993 of robbery and felony-murder with a special circumstance, and sentenced to life imprisonment without possibility of parole.  Petitioner challenges his conviction on the following grounds: (1) prosecutorial suppression of exculpatory evidence; (2) ineffective assistance of counsel; (3) violation of due process in post-conviction discovery proceedings; and (4) insufficient evidence of robbery-murder special circumstance.

        Respondent has moved to dismiss the petition as time barred.  Petitioner has moved for leave to file a surreply or, alternatively, to strike respondent's reply. The court will address the latter housekeeping matter first.

1    <u>Petitioner's Motion to Strike the Reply Or File a Surreply</u>

2    Petitioner contends that respondent has improperly raised new issues in the reply.

3 The reply brief does address the merits of petitioner's claims for relief as well as the statute of

4 limitations, but does so in response to petitioner's assertion of factual innocence as a gateway

5 through which his otherwise time-barred claims should pass.  Accordingly, the motion to strike

6 the reply will be denied.  The court will grant the alternative request for consideration of

7 petitioner's surreply, in light of petitioner's pro se status and respondent's lack of opposition to

8 the request.

9      <u>Motion to Dismiss</u>

10     *Background*

11    Petitioner was convicted in San Joaquin County of robbing and murdering an 81-

12 year-old man, Ramon Ables.  The victim had been beaten and his wallet stolen.  Ables died the

13 day after sustaining injuries to his head.  Petitioner does not dispute that he inflicted the injuries

14 that caused Ables' death.  At trial, petitioner testified that he struck Ables in self-defense and

15 without intent to steal his wallet.  Felony-murder liability required a jury finding that the murder

16 occurred during commission of a robbery, so petitioner's intent was a central issue.  The

17 evidence against petitioner included the testimony of an eyewitness and the discovery of Ables'

18 wallet in the police interrogation room where petitioner had been questioned.  Petitioner's

19 conviction was affirmed on appeal in 1994.  The Court of Appeal corrected a sentencing error

20 that left the LWOP term intact.  The California Supreme Court denied review the same year.

21    Petitioner filed his first petition for collateral relief in superior court on November

22 24, 2004; it was denied on January 10, 2005.  The second state court petition was filed in the

23 Third District Court of Appeal on February 13, 2005, and denied on Feb. 17, 2005.  A third state

24 court petition was filed in the state Supreme Court on March 15, 2005, and denied on Feb. 1,

25 2006.  Lodged Docs. 6-11.

26

On February 22, 2008, petitioner filed a motion for post-conviction discovery in superior court pursuant to Cal. Penal Code § 1054.9.  The superior court took no action for 18 months, and petitioner filed a petition for writ of mandate in the court of appeal.  That court directed the trial court to "commence proceedings forthwith" on the merits of the discovery motion.  On January 13, 2010, the superior court denied the motion for discovery on grounds it had not been served on either the District Attorney or the Attorney General.  Petitioner sought reconsideration, supported by a letter from the Attorney General's Office to the court of appeal acknowledging pendency of the discovery motion and stating the state's non-opposition to the petition for writ of mandate.  The superior court denied the motion for reconsideration without comment on February 4, 2010.  Lodged Docs.  18-24.

Petitioner initiated a second round of state post-conviction review by filing habeas petition in superior court on September 5, 2010.  That petition was denied on October 5, 2010.  Petitioner proceeded to the state appellate court on January 7, 2011, and that court denied his petition on January 20, 2011.  Petitioner's final state petition was filed in the California Supreme Court on February 9, 2011, and denied on July 27, 2011.  Lodged Docs. 12- 17.

The instant federal petition was filed on January 4, 2012.

*Statute of Limitations*

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The statute is tolled during the pendency of a "properly filed" application for state post-conviction relief.  § 2244(d)(2).  The limitations period is also subject to equitable tolling, see Holland v. Florida, 130 S. Ct. 2549 (2010), and to an equitable exception for actual innocence, Lee v. Lampert, 653 F.3d 929, 931 (9th Cir. 2011) (en banc).

*Discussion*

Petitioner's conviction became final on January 11, 1995, ninety days after the state supreme court's denial of his petition for review on direct appeal.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (period of "direct review" for purposes of 28 U.S.C. § 2244(d)(1)(A) includes the ninety-day period within which a petitioner can file a petition for a writ of certiorari with the United States Supreme Court).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which established the one-year limitations period, went into effect on April 24, 1996.  Petitioner therefore had one year after that date, or until April 24, 1997, to file a federal habeas petition or toll the running of the limitations period pursuant to § 2244(d)(2).  Patterson v. Stuart, 251 F.3d 1243, 1246 (9th Cir. 2001).

Petitioner did not file a federal petition by April 24, 1997, nor did he file any state petition that might have tolled the statute.  Indeed, petitioner filed no application for post-conviction relief in any court until 2004.  A state court habeas petition filed beyond the expiration of AEDPA's statute of limitations does not toll the limitation period under § 2244(d)(2).  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir.2001).  Accordingly, the instant petition must be dismissed as time-barred unless petitioner can establish either that the limitations period began to run from a later date

1    pursuant to § 2244(d)(1), or that an equitable exception to the timeliness requirement applies.

2                            Belated Discovery of Factual Predicate

3                 28 U.S.C. § 2244(d)(1)(D) provides an alternative triggering event for the one-

4    year limitations period.  See generally, Lee, 653 F.3d at 933.  Under this provision the

5    limitations period begins to run "when the factual predicate of a claim 'could have been

6    discovered through the exercise of due diligence,'" not when it was actually discovered.  Ford v.

7    Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012), cert. denied, 133 S. Ct. 769 (2012).  Due

8    diligence does not demand "the maximum feasible diligence" but "does require reasonable

9    diligence in the circumstances."  Id.  Section 2244(d)(1)(D) applies only if, by the end of the

10   appellate process, "vital facts could not have been known."  Id. (citing Schlueter v. Varner, 384

11   F.3d 69, 74 (3rd Cir. 2004) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir.2000)).  "Time

12   begins when the prisoner knows (or through diligence could discover) the important facts, not

13   when the prisoner recognizes their legal significance."  Hasan v. Galaza, 254 F.3d 1150, 1154 n.

14   3 (9th Cir. 2001) (quoting Owens, 235 F.3d at 359).

15              Petitioner contends that the California Supreme Court's decision in In re Steele,

16   32 Cal.4th 682 (2004), regarding the scope of post-conviction discovery under Cal. Penal Code §

17   1054.9, made it possible for him to identify a Brady violation and discover new evidence to

18   support such a claim.  He appears to argue that the Steele decision constitutes a triggering event

19   for purposes of  § 2244(d)(1)(D).  See ECF No. 16.  A state Supreme Court decision clarifying

20   state law does not ordinarily provide a basis for the § 2244(d)(1)(D) trigger because a

21   clarification of law in and of itself does not constitute a "factual predicate."  Shannon v.

22   Newland, 410 F.3d 1083, 1088-89 (9th Cir. 2005).

23              Petitioner explains that at his trial, Detective Belcher testified that petitioner's

24   fingerprints were not on the victim's wallet, but that someone else's fingerprints were.  ECF No.

25

26

1 at 29 (excerpt of trial transcript); see also Lodged Doc. 25 at 188-89.[1]  Petitioner's Brady,

ineffective assistance, and insufficient evidence claims are all based on the theory that discovery

of the report itself would have exculpated petitioner by undermining the robbery charge.

Petitioner argues that he had no means to obtain the exculpatory evidence prior to the Steele

decision.   Due to what petitioner characterizes as due process violations by he trial court in post-

conviction proceedings, it appears that he still has not obtained a copy of the report.

      The trial record, however, reveals that the report was entered into evidence and

that petitioner's counsel stipulated "to the fact that the examination of the wallet and insert failed

to reveal any identifiable latent impressions."  Lodged Doc. 26, Reporter's Transcript (RT) at

1067.   Petitioner could have obtained a copy of the report, which was Exhibit 27 at trial, id.,

from his trial or appellate counsel even without the benefit of Cal. Penal Code § 1054.9 or

Steele.

      Section 2244(d)(1)(D) does not apply where trial testimony put petitioner on

notice of his claims.  See Ford, 683 F.3d at 1236.  As in Ford, the claims here are based on

"speculative inferences" from the trial record, which do not constitute a newly discovered factual

predicate.  Id.  Even prior to the enactment of the state post-conviction discovery statute and the

Steele opinion, petitioner was free to file state and federal habeas petitions making the same

---

[1] The following exchange took place on cross-examination of Det. Belcher:
Q. Were any [fingerprints] found [on the wallet]?
A. None found.
Q. No latents found at all?
A. No.
Q. Or were there?
A. I'm trying to think.  Let me check.  There may have been one found on it, but it didn't come back to Mr. Pouncil.  That may be in the Department of Justice report.
Q. I am not sure I received a report on that subject.  I don't know if there is one.
A. I believe there is one and it was tested against Mr. Pouncil's fingerprints and it was not his.  I'm not 100 percent sure on that.  I am 100 percent sure we did not have his fingerprints on the wallet.
Lodged Doc. 25 at 188-189.

1   claims he has presented here.  Since petitioner's conviction became final 17 years ago, California

2   has indeed adopted new mechanisms for state prisoners to obtain discovery, and petitioner has

3   attempted to use them.  Petitioner's use of those mechanisms, however, was in pursuit of

4   evidence to support claims already known to him.  Such efforts do not support a belated trigger

5   date under § 2244(d)(1)(D).

6           Actual innocence

7           In Schlup v. Delo, 513 U.S. 298 (1995), the U.S. Supreme Court announced that a

8   showing of actual innocence could excuse a procedural default and permit a federal habeas court

9   to reach the merits of otherwise barred claims for postconviction relief.  A showing of innocence

10  under Schlup will also permit review of a time-barred claim.  Lee v. Lampert, supra, 653 F.3d at

11  931.  To pass through the Schlup gateway, a petitioner must demonstrate that "he falls within the

12  'narrow class of cases implicating a fundamental miscarriage of justice. . . .'"  Schlup, 513 U.S.

13  at 314-315.  To make a credible claim of actual innocence, petitioner must produce "new reliable

14  evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

15  critical physical evidence – that was not presented at trial."  Id. at 324.   The district court must

16  find that "in light of the new evidence, no juror, acting reasonably, would have voted to find him

17  guilty beyond a reasonable doubt."  Id. at 329.  "Actual innocence" in the miscarriage of justice

18  context means factual innocence, not mere legal insufficiency.  Bousley v. United States, 523

19  U.S. 614, 623-24 (1998); Sawyer v. Whitley, 505 U.S. 333, 339 (1992) (citing Smith v. Murray,

20  477 U.S. 527 (1986)).

21          Petitioner's showing falls far short of this standard.  First, petitioner has not

22  produced new evidence that was not presented at trial.  The jury was aware that petitioner's

23  fingerprints were not on the victim's wallet and that someone else's fingerprints may have been.

24  Schlup does not contemplate relitigation of the exculpatory value of trial evidence.

25          Second, as the jury apparently concluded, the absence of petitioner's fingerprints

26  has little probative value regarding his taking of the wallet or the relationship (temporal or in

1    terms of intent) of that theft to the fatal assault.  With or without a new and "exculpatory"

2    fingerprint report, a jury could permissibly base a guilty verdict on the eyewitness testimony,

3    circumstances of the wallet's discovery in the interrogation room, and petitioner's other acts of

4    robbery.   Petitioner emphasizes a quotation taken out of context from the Court of Appeal

5    decision in his case: "Although there was substantial evidence defendant stole Ables's wallet,

6    there is nothing to suggest the intent to steal was formed at or before the time of the assault."

7    See Lodged Doc. 2 at 10.  This comment was part of the appellate court's discussion of the

8    probative value of uncharged offense evidence, in light of the absence of direct evidence of

9    intent.  The court found other robbery evidence admissible and affirmed the jury's verdict, which

10   was necessarily based on a finding that the intent to steal *was* formed at the time of the assault.

11   The appellate court's comment does not support petitioner's claim of innocence.

12           In his surreply, petitioner points to what he characterizes as additional evidence of

13   actual innocence: the fact the only witness who testified against him at trial never testified at the

14   preliminary hearing.  At the preliminary hearing an officer testified about the witness's

15   statement.  According to petitioner, the prosecution refused to disclose the location of the

16   witness prior to trial.  The defense therefore did not interview her, and was "ambushed" by her

17   trial testimony.  Even accepting the truth of petitioner's allegation that the witness could have

18   been effectively impeached had the prosecutor acted ethically and his attorney diligently,

19   petitioner has produced no facts that were not known at the time of trial.  Petitioner's other

20   arguments regarding his "innocence" are also arguments about the validity of inferences that the

21   jury drew and credibility determinations that the jury made in 1993.  Those arguments fall well

22   outside the narrow scope of the Schlup actual innocence exception.

23           Petitioner has produced no "new reliable evidence – whether it be exculpatory

24   scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," Schlup, 513

25   U.S. at 324, to support his claims that the victim's death was accidental and that the assault was

26   not in the course of a robbery.

1    Equitable tolling

2    Petitioner argues that his late filing should be excused under Murray v. Carrier,

3  477 U.S. 478, 488-89 (1986), which held that ineffective assistance of counsel can constitute

4  "cause" for purposes of the "cause and prejudice" analysis that governs a state prisoner's

5  attempts to overcome procedural default.  Petitioner faces dismissal for untimeliness, not

6  because the state court denied post-conviction relief on state law procedural grounds.[2]  The

7  undersigned construes the citation to Murray v. Carrier as an assertion that the statute of

8  limitations should be equitable tolled on grounds of ineffective assistance.  See Holland,  130 S.

9  Ct. at 2562.

10    A petitioner is entitled to equitable tolling only if he shows (1) that he has been

11  pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

12  prevented timely filing.  Ford, 683 F.3d at 1237 (citing Holland, 139 S. Ct. at 2562).  Attorney

13  error supports equitable tolling only if it constitutes an extraordinary act of misconduct.

14  Holland, 139 S. Ct. at 2564.  Petitioner has alleged no extraordinary act of attorney misconduct

15  that prevented timely filing of his habeas claims.  As previously discussed, the basic facts set

16  forth in the petition were known to plaintiff and could have been presented within the limitations

17  period.

18    For all the reasons set forth above, the motion to dismiss the petition as untimely

19  should be granted.

20    *Non-cognizable Claims*

21    Petitioner does not contest respondent's argument that Claims One and Three of

22

23    [2] Petitioner was in fact denied relief on procedural grounds the first time he reached the
   California Supreme Court. Lodged Doc. 10.  On his second round of state post-conviction review,
24  he was denied relief on procedural grounds in the superior court, Lodged Doc. 13, and without
   comment in the court of appeal and supreme court, Lodged Docs. 15, 17.  The federal court "looks
25  through" an unexplained denial to the last reasoned opinion of a state court.  Ylst v. Nunnemaker,
   501 797, 804-805 (1991).  The motion now before this court however, focuses on the statute of
26  limitations and not on procedural default.

the petition, which attack the state courts' processing of petitioner's post-appeal discovery motion, are not cognizable in federal habeas. The undersigned notes that petitioner's first claim for relief, liberally construed, alleges the suppression of fingerprint evidence both at trial and in post-conviction discovery proceedings.  Both Claim Three and Claim One, to the extent it goes to post-conviction events, fall outside the scope of this court's habeas jurisdiction because they do not attack the conviction on which petitioner's custody is based.  <u>See</u> § 2254(a).  Moreover, errors of state law do not support federal habeas relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  Accordingly, these claims should be dismissed as non-cognizable as well as for untimeliness.

For the reasons set forth above, IT IS ORDERED that petitioner's motion to strike respondent's reply or for leave to file a surreply (ECF No. 23) is denied in part and granted in part, as follows: the motion to strike the reply is denied, and the alternative request for leave to proceed on a surreply is granted.

IT IS RECOMMENDED that respondent's motion to dismiss (ECF No. 14) be granted and the petition be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-one days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the

////
////
////
////

10

District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
poun0042.mtd.AC rev